UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25CR00102 AGF |
| | ) | |
| MELVIN JENKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

## 1. PARTIES

The parties are the defendant Melvin Jenkins, represented by defense counsel Evan Greenberg, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the Indictment, the Government agrees to dismiss Count Two at the time of sentencing. The United States further agrees that no further federal prosecution will be brought in this District relative to the defendant's distribution of

1

controlled substances and possession of firearms, from December, 2024 until the date of the indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that in consideration for the dismissal of Count Two, which carries a statutory, mandatory and consecutive sentence, neither party will request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

The defendant also agrees, pursuant to the guilty plea, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: pill presses, digital scales, money counter, firearm magazines, ammunition, pill capsules, controlled substances, blenders, firearms, seized on December 12, 2024.

## 3.   ELEMENTS

As to Count 1, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i)   The Defendant possessed a mixture or substance containing fentanyl and heroin, Schedule II controlled substances;

(ii)   The Defendant knew he was in possession of a controlled substance; and

(iii)   The Defendant intended to distribute some or all of the heroin and fentanyl to another person.

2

**4.   <u>FACTS</u>**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

A joint state and federal investigation, involving the FBI, DEA and St. Louis Metropolitan Police, ultimately developed Defendant Melvin Jenkins as a suspect and led investigators to a residence in the City of St. Louis, Eastern District of Missouri, located at 4241 Chippewa. A search warrant was obtained and executed on December 12, 2024. Defendant was present, along with his paramour A. Taylor, their child and Defendant's nephew K. Owens. All occupants of the house were detained pending the search and investigation.

Following a systematic search of the house, police found and seized the following evidence:

<u>Living Room</u>: An AR-15 style, .300 Blackout, semi-automatic pistol, which was found under the couch and claimed by Defendant's cousin.

<u>Kitchen</u>: A firearm magazine containing twenty-two cartridges, which was found on the top of the refrigerator; One box containing seventy-eight (78) cartridges, 7.62 x 39 caliber, which was found on top of refrigerator; Two i-phones, which were recovered from kitchen counter and a third i-phone, attributed to Defendant's paramour, was also found on kitchen counter.

<u>Second-Floor Bedroom (at front of house)</u>: Century Arms 7. 62 by 39mm caliber semi-automatic pistol and magazine containing twenty-nine cartridges, which was found on shelf of closet (during police questioning, following waiver of his Miranda rights, Defendant told police they would find his "mini-draco" in his bedroom); A Glock magazine, which was found on dresser;

an i-phone, which was claimed by Defendant and found on Defendant's bed; Two additional i-phones were found inside of a pair of sweatpants.

Basement: The entire concrete floor of the basement was littered with empty gelatin capsules, plastic baggies, bottles of Dormin (a common cutting agent) and other debris. A gap in a wall was discovered, covered with drywall. The following was found on the floor or on two tables and the tables were covered with drug residue: A pill press, box of sandwich bags and electronic scale, which were found on a table; A money counter, which was on the floor; Four empty firearm magazines and assorted ammunition; a plastic bag containing pill capsules; another digital scale; a canister of lactose (common cutting agent), toothbrush and a credit card with residue. A bag was also found, containing purple and white capsules with a powdery substance and a dark grey compressed powder.

Rear Wall of Basement: Within the wall investigators located blenders, other narcotics paraphernalia, pill presses, hundreds of empty gelatin capsules.

Dodge Charger: A Dodge Charger was parked behind the house in the driveway. A consent search revealed a loaded Glock 17, Gen 5 model, .9mm semi-automatic handgun, on the driver seat. The magazine of the gun contained 22 cartridges and one live round in the chamber. A wallet was located in the vehicle, which contained Defendant's identification, including his social security number.

Analysis of A. Taylor's cell phone revealed text messages between Defendant and A. Taylor, the mother of his child. The text messages confirmed that Defendant was distributing drugs.

The drugs found in the plastic bag, the capsules from the basement floor and all suspected controlled substances were transported to the crime lab. Analysis revealed and for purposes of relevant conduct the Defendant was in possession of approximately 39 grams of fentanyl analogue, 5.81 grams of cocaine base and 190 grams of a mixture or substance containing fentanyl and heroin, the converted drug weight is equivalent to 890 kilograms. Defendant admits that he intended to distribute some or all of the narcotics to another person and that he possessed one or more firearms.

**5.     STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count 1 is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of not more than 4 years.

**6.     U.S. SENTENCING GUIDELINES (2025 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

**a. Chapter 2 Offense Conduct:**

### Count 1

**(1) Base Offense Level:** The parties agree that the base offense level for Count 1 is 28, as found in Section 2D1.1(c)(6), Drug Quantity Table, as Defendant possessed with the intent to distribute at least 700 kilograms but less than 1,000 kilograms of Converted Drug Weight.

5

**(2)** **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: 2 levels are added pursuant to Section 2D1.1(b)(1) as Defendant possessed a firearm.

2 levels are added pursuant to Section 2D1.1(b)(12) as Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

**b. Chapter 3 Adjustments:**

**(1)** **Acceptance of Responsibility:** As to Count 1, the parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction—including any violation of this agreement—the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

**c.** **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29 for Count 1.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-

application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

8

defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future

9

rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

10

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

If the defendant is not a U.S. citizen, the guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

11

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

2/19/26
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

2/19/26
Date

Melvin Jenkins
Defendant

2/19/26
Date

Evan Greenberg
Attorney for Defendant

12